All rise. Ladies and gentlemen. Okay, the next case on the balcony is 514-0449 Pickle v. Lemon v. Smock. And we have Ms. Hart. You may begin when you are ready. May it please the Court. Counselor, my name is Katherine Hart from the Office of the State Health Defender. And I represent the appellant, Lemon v. Smock. When are the police allowed to arrest a person without a warrant in their own home following a neighbor's noise complaint of yelling coming from within that person's home? If the Fourth Amendment would ever allow such an arrest, it certainly wasn't under the circumstances present in this case. The Fourth Amendment has drawn a line at the entrance to a home. An awardless arrest or search is presumed unreasonable in absence of indigent circumstances. The guiding principle is reasonableness. There was nothing reasonable about what happened to Lemon v. Smock. There are approximately eight factors that the Illinois Supreme Court has articulated as indigent circumstances to be considered. Those are, was there a recent offense? Do circumstances militate against delay to get a warrant? Was the offense grave or violent? Was the suspect armed? Was there a probable cause? Was there a risk of flight? Was the suspect on the premises? And was the police's entry peaceful? In this case, on November 23, 2013, many of these factors were not present. Leonard Smock never left his home. There was no indication he was a danger to himself or to others. This was not a serious offense, nor a violent offense. It was at most a Class C misdemeanor of disorderly conduct. There was no indication that he had a gun. There was no indication that he would flee. And although the officers eventually gained entry by Mr. Smock opening the door, they had to knock repeatedly and insist that he come and open the door. These circumstances were not indigent. Even where there are no indigent circumstances, a warrantless arrest in a person's home might withstand Fourth Amendment scrutiny if the arrest was made in hot pursuit under the theory first espoused in United States v. Santana. The United States Supreme Court found that two questions were relevant to a determination of hot pursuit. The first question is, when the police first sought to arrest the defendant, was he in a public place? The second question is, did the defendant's act of retreating thwart a proper arrest? In this case, the court found that an exception to the warrant requirement was present because the officers were in hot pursuit when Leonard opened the door to the police's insistent knocking and refusal to leave, thereby exposing himself. Of course, this case involves a set of facts which are the opposite of hot pursuit. Leonard was in his home, possibly making too much noise, but otherwise not out in public or breaking the law. The police came to his door, knocked, and repeatedly asked him to come out. Leonard refused to leave the sanctuary of his home unless the police had a warrant. The police threatened him that they would not leave until he came out and spoke to them. As soon as he opened the door, while never crossing the threshold, he remained in his home the entire time. Officer Shires reached into Leonard's home to grab his wrist and stated, You're under arrest. Is there any question in this case, because I couldn't really tell from the briefs, that he had never crossed the threshold? Is there an issue on that? There is not an issue. At the motion here, we consider the denial. The State specifically conceded that he had never crossed the threshold. Okay. Did the State concede that they reached in and grabbed him by the wrist? And they also testified and conceded that they reached in. The State's theory was that by opening the door to his trailer, he exposed himself to the public, and that under Santana, that was sufficient to allow an arrest in public. However, that's not the proposition that Santana stands for. Santana is not implicated here because the police sought to arrest him in a private place. So the first part of the two-part question in Santana is in the negative. Leonard never willingly or voluntarily stood in his open doorway. He was forced to do so by the police's refusal to leave. There are two similar cases in the Illinois appellate courts. One is People v. Davis, which is a second district case from 2010. Another one is People v. Wimbley, which is a first district case from 2000. And in both cases, the appellate courts found no exigent circumstances. And in both cases, the courts said that hot pursuit was not implicated. And in both of those cases, the defendants were in their home when the door was open for different reasons, and in Davis, the door was closed, the police were walking in the hall, the defendant opened the door, and then retreated back into his home but never crossed the threshold. And in Wimbley, the police had a confidential source go to the basement door, knock on the door, and the defendant responded to that knock. Again, never crossed the threshold. And in both cases, the courts said hot pursuit is not applicable here because the defendant was never in public. The court here incorrectly agreed with the state's argument at the motion to reconsider that by exposing himself in response to the state's demands that he come to the door, even though he never crossed the threshold, that he lost the protections of the Fourth Amendment. As the second district stated, quoting the fourth district in People v. Day, to hold these factors alone sufficient to justify a warrantless entry and arrest would all but emasculate the protections afforded by the Fourth Amendment. It was not my intention to argue argument two or three. If this court has any questions. Let me ask you this. Let's suppose that we agree with you that this arrest was unlawful. What relief do you think should be afforded your client? His conviction should be reversed because... And then they'll charge him again. And so what will happen on the retrial? I don't believe if this conviction is reversed and the evidence that resulted from this illegal arrest was suppressed that there's any evidence to support the lack of possession of methamphetamine. So not only is the arrest illegal, but what you're then asking is that all of the evidence that was obtained would also be suppressed as a result of our ruling. That's correct, Your Honor. You want all of that relief? Yes, that's correct. Under Wong-Sun, the fruit of the poisonous tree here, which was the methamphetamine recovered from Mr. Smock when they searched him pursuant to this unlawful arrest. Of course, that would have to be with a motion to suppress. That doesn't come from our order. If there was such an order, that would have to come from a motion to suppress, wouldn't it? I believe that this Court would find that there's no other evidence in the record to support a conviction for unlawful possession of methamphetamine. We are asking for an outright reversal because without finding the drugs on him, there's no evidence to support an unlawful possession conviction. But that's what I'm asking is this is a direct appeal, right? We have de novo review. So as Justice Walsh was saying, we would, if we grant your relief, we would vacate the jury's judgment. We'd vacate the trial court's judgment. I'm sorry. But we would remand. We would not necessarily have to find the fruit of the poisonous tree. We would find that the arrest was unlawful. Certainly, Justice, you are welcome to disagree with our argument that the fruit of the poisonous tree. No, your argument would be that the arrest was unlawful. We do believe that the arrest was unlawful, but the search, which was pursuant to the arrest, was fruit of the poisonous tree. Well, is that on appeal pursuant to a motion to suppress? Was there a motion to suppress the evidence that was denied? I believe that the motion to suppress covered. I could be wrong, your honors. That's what I'm trying to find out. My understanding is that the motion to suppress. File the motion to suppress the arrest and the evidence. Okay. I apologize. That's okay. I had it. It says he wrote a letter to his lawyer asking that he file a motion to suppress. And then he himself did file. The defendant filed pro se, right? That's correct. Okay. Because his lawyer indicated that he would not adopt the defendant's pro se motion. I thought that was interesting. So there was a hearing on the motion to suppress that the defendant proceeded pro se. Yes. And there was also a motion to reconsider the denial. Of the pro se motion to suppress. Of the pro se motion. So there was testimony as to both. I have to look at the language. Okay. Thank you very much. Thank you. You'll have a few minutes after the state argues. This is your third one today? Or fourth? Fourth this month for today. But we, of course, are not tired of you yet. Not yet. We're happy to have you. Okay. May it please the court. Counsel. Chelsea Caston on behalf of the state. Your honors. Standing to claim the protection of the fourth amendment depends on whether the person who claims the protection. Has a legitimate expectation of privacy in the invaded place. In this particular instance. It's 130 in the morning, and this is not the first time that the defendant's neighbor had to call the police complaining of noise. Not just noise, but I believe it was described as banging, yelling and shouting. So. In the quiet use and enjoyment of his property. The police came out and responded and stated several times that while they were speaking to the neighbor. They could hear the banging, the yelling and the shouting, even as they approached the residence of the defendant. While originally refusing to open the door, the defendant did eventually open it and expose himself to public view. When he was told that he was being placed under arrest, he told the police he's not going to jail and attempted to retreat into the interior of his home. He left the door open as he attempted to flee. He's fleeing in his own house. Yes, your honor. My misdemeanor. Yes, your honor. And what prevented your. Your client, the police from getting a warrant. I guess nothing other than they were trying to effectuate the arrest. And they were didn't want to get the warrant because it was a misdemeanor. No, your honor. I don't think that that was the case at all. I think that they were trying to do their jobs. They were trying to serve the community. And in this case, the community was being greatly disturbed once again by the defendant and his late night hours. I don't think there's an issue on probable cause. Do you? No, your honor. I was really confused by the brief of the state because the brief talks about the defendant had no right to file a pro se motion. The court had no right to hear the pro se motion. I mean, it seemed like the state went off on a different kind of engine than what you're arguing, which are the facts and exigent circumstances. But what about that? I mean, why are we talking about whether someone has the right to file a pro se motion when he's represented? Your honor, that was just because at the time that he was represented by the public defender, who he later fired, because the attorney told him for ethical reasons because he thought there was no merit to the motion to suppress. He said he wasn't going to file it. And so the defendant got mad and started filing motions on his own pro se while he was still represented by counsel, which just goes into hybrid representation. And no one's entitled to that, your honor. So you'll see in the record where the court actually finds out and is surprised that the defendant had fired his attorney. I think he even questioned, he's like, what do you mean you fired your attorney? And so he had already filed the motion. He was already trying to represent himself while still relying on the legal expertise of his counsel. And it was only when the court asked for clarification that they found out, oh, okay, so you don't want to be represented by the attorney. And I think the reason for that speaks also to the issue of orthodontic protections, your honor. His own counsel said he wasn't going to file the motion to suppress because he thought that in hot pursuit, the police acted reasonably and he didn't see any violation. Do you think that someone could stand on one side of the threshold with the police on the other side of the threshold and just stand there and say, I'm not coming out? No, your honor. And I believe it was referenced. There was a case on that? Yes, your honor. I believe it was actually Wembley from the first district. So it's not binding on the court, but the court can take notice of it, where they said that there's, no, that's not it. A person who willingly stands in an open doorway to the home gives up the privacy enjoyed in the sanctuary of the home. In addition, your honor. That doesn't create, I don't think that case said it creates exigent circumstances, does it? I don't believe so, your honor. However, it does speak to the fact that you are in public view if you're standing in the doorway. And obviously they could hear him, so he was exposing that part of himself to the public by shouting and banging and yelling. And in the presence of, in looking at the abney factors, it's not required that all the factors be present in order to meet the standard from the court, the guidelines. The court just has to look at the totality of the circumstances and determine, based on the facts, if there was a violation or not. And obviously we're arguing, your honor, that there was not. It certainly is not your typical hot pursuit case. No, your honor, it definitely is not. However, the hot pursuit doesn't have to be very long, it doesn't have to go very far. It's still considered a hot pursuit. I'm having difficulty finding any pursuit whatsoever. What is the hot pursuit? Was he chased someplace? Into his home, your honor, yes. He was in his home. He was standing at the doorway, your honor. He's standing at the doorways in your home, right? But he wasn't in public view in the doorway. Okay, but he was standing in front of a picture window. Is that public view? Yes. Yes. So, is that the same thing? It's a really good question, your honor. I'm not entirely sure because obviously that's an enclosed, but the door was open. The door was open. What if he had a screen door? Screen door, I think there would be a bigger argument. What about a storm door? Glass or plastic, whatever they use now. I'm not entirely sure, your honor. There would be a lot more merit to his argument instead of he tried to flee inside and left the door open. Well, he's not fleeing. That's the thing. You can't have that. He's standing there and he hasn't crossed the plane, so he's still in his house. I'm having difficulty finding the hot pursuit. Your honor, I think maybe in this case hot pursuit sounds a little bit more exciting than it actually was. He was standing at the threshold. The doorway is the threshold. Right. So, when they told him he was going to be placed under arrest. He stayed there. He shouted he was not going to be arrested and tried to go into the interior. Oh, so he ran? Yes, your honor. He tried to go into the interior of the home and they ended up catching him in his living room or kitchen. So, it wasn't. So, that's the pursuit after he ran? Yes, your honor. That was the pursuit. Okay. Again, hot pursuit is probably a more exciting title than what actually happened under the fact that he ran. I didn't know if it's pursuit. Well, it's hot. Let's leave that out. So, it's just pursuit maybe. Yes, your honor. They're just trying to do their jobs and they're trying to serve their community and pride down the neighborhood at 2 o'clock, 130 in the morning. Now, they can't be. So, a neighbor said he made a lot of noise. Yes, he complained multiple times. And this is the first time they ever arrested him for that or hurt? This is the first time they hurt. Did they hear any noise? The officers, I believe, stated in the record that they had heard him before. However, this was the first time that the neighbor was willing to actually sign a complaint as to the disturbance. Okay, so we don't have a warrant. No, your honor. So, we have a complaint. Yes, your honor. And that's based on, did he swear? Did he give an oath that he swore that this happened? Yes, your honor. He ended up testifying. And so, the police can take an oath? I'm sorry? Are they allowed to take an oath? The police? Yes. Yes, they're on the record. So, they can do marriage licenses and stuff like that? Get my car title changed if I have to? Their testimony is warranted, your honor. And the neighbor testified at trial. And they said... Well, they weren't at trial. I'm not at trial. I'm on the street here. Oh, okay. I'm sorry. I wasn't following you. I'm just wondering, if all you have to do is have someone sign a complaint, then you can go in somebody's house and get them. If you see them. Your honor, that's probably minimizing the facts in this case. They walked up to the door to speak with him. He opens up the door. He's at the threshold. They have to tell him that he's going to be placed under arrest. He says, no, I'm not going to. Yes, he says, no, I'm not going to jail. And he runs into his home. No, he stays in his home. He didn't run into his home. Well, he's at the threshold. He stays in his house. Further into his home from the threshold. Okay. So, say he's three feet back from the threshold. He's not right at the door. Is that enough? Your honor, I don't think it's clear on the record exactly what the distance was from the door. Standing three feet, I'm not sure you can actually open the door. No, what I'm saying is, if he's right at the door, you're saying that's enough. Well, if he's just back a little bit, is that enough? How far back can he be? Your honor, I believe the test is that they have to take a step. And if you can be at the threshold. That's okay. Go ahead. I believe the test is that if he can take a step and you're at the threshold, then that's sufficient. That's the Santana. U.S. v. Santana. Yes, your honor. Yeah. And Santana, he was actually at the threshold and retreated into his house. Here we have him a step behind the threshold and retreating into his house. He's already in his house. Yeah, Santana too. But he was on the threshold in Santana, right? Yes, your honor. Here, as the judge pointed out, he's behind the threshold. And now he's doing the same thing as Santana. Yes, your honor. But they went into the house to get him. Yes, your honor. Has no more questions. It's a tough, it's a tough, like where do you draw the line, right? Yes, your honor. I think that was actually a quote from Pondexter where they said at some point you have to, like, draw the line. So it's up to the court to decide where the line's at. But the U.S. Supreme Court hasn't given us much help in that regard. Maybe at some point they will. Thank you very much. You did well today. Thank you. Thank you. Okay. Do you have some comments to make? I have a few comments. I do want to just clarify your earlier question. My understanding was that it was a motion to quash arrest and sentence. Okay. If that's incorrect, then I apologize. No, I think the issue is because it was pro se and there was all this going on with the public defender. So I appreciate the clarification. As to the timing of the pro se motion, Mr. Smock filed his pro se motion on March 21st. And that is also the day when he went pro se. And the court had the hearing on April 1st. So there was never hybrid representation in this case. What about Justice Walsh's questions? Can you address some of those? I do want to, in terms of an oath? No, in terms of the retreat and where you're standing. The first thing is that at the motion to reconsider hearing, the state unequivocally agreed that the officer's testimony was that Smock was never outside his home and he never crossed the threshold. So he was inside his home. Although he did open the door. And that's another issue here, which is he initially refused to open the door and specifically said, unless you have a warrant, I'm not opening the door. And the police didn't leave. They kept on knocking and saying, we're not going to go away. You must come to the door. So he eventually came to the door. That was not voluntarily or willingly. And in fact, in the state's brief, the state uses the word acquiesced. And that's correct. He acquiesced to police authority. The whole point of Santana is that the defendant in that case, while standing on the threshold, not within the home, as Mr. Smock was, but on the threshold, with the door open, opened to the public. And so when the police came to arrest Ms. Santana, she was in public. But that was not the case here. So the first part of Santana is very specific. Was the defendant in a public place where they could be arrested pursuant to probable cause? And we're not disputing that there was probable cause. Then can a person retreat to a private residence to thwart the public arrest? And the court said no. But we don't have the first part of Santana here. Mr. Smock was never in a public place. He never voluntarily opened himself to the public. He was in his home. He remained in his home at all times. And Officer Shires even testified he reached across the threshold and grabbed Mr. Smock's wrist and said, tried to grab his wrist and said, you're under arrest. As soon as Mr. Smock opened the door. Never having crossed the threshold. Under those circumstances, there's no hot pursuit here. And there are no evident circumstances. And this warrantless arrest in Mr. Smock's home is unlawful. We would respectfully request that this court reverse Mr. Smock's conviction. Thank you. Thank you. Okay. Your case will be taken under advisement and we will issue an order in due course. The final case is on our docket, waived oral argument. So that concludes the July 19th session of this court. Thank you. Thank you.